IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TINA M. TRAUTERMAN, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 1:12-268
)
CAROLYN COLVIN, Acting Commissioner )
of Social Security,[1] )
)
    Defendant. )
)

AMBROSE, Senior District Judge

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 8 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 9 and 13). Plaintiff also filed a Reply Brief. (Docket No. 14). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 12) is denied and Plaintiff's Motion (Docket No. 8) is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Plaintiff applied for DIB

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013 and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

on or about January 6, 2010. In her application, she alleged that since July 15, 2009, she had been disabled due to head trauma. (R. 11, 127, 144). Administrative Law Judge ("ALJ") David F. Brash held a hearing on September 2, 2011, at which Plaintiff was represented by counsel. (R. 24-56). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 50-55). In a decision dated October 7, 2011, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 11-23). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on October 16, 2012, the Appeals Council denied Plaintiff's request for review. (R. 1-3). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 8 and 12). Plaintiff raises five main issues on appeal:

1. Whether the ALJ erred by failing to evaluate the effects of Plaintiff's post-concussive headaches on her ability to work on a regular and continuing basis. See Pl.'s Br. [ECF No. 9] at 5-8.

2. Whether the ALJ's credibility finding is insufficient as a matter of law. Id. at 9-11.

3. Whether the Court should issue an immediate award of benefits because the ALJ erred in finding that Plaintiff was able to perform competitive work. Id. at 12.

4. Whether the ALJ failed to address the limitations set forth in the medical opinion of the state agency physician who reviewed the file. Id. at 13-15.

5. Whether the ALJ erroneously failed to include Plaintiff's use of a cane in his RFC determination and hypothetical question to the VE. Id. at 15-18.

The issues are now ripe for my review.

## II.   LEGAL ANALYSIS

### A.   STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in

the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not,

3

whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B. WHETHER THE ALJ ERRED BY FAILING TO EVALUATE THE EFFECTS OF PLAINTIFF'S POST-CONCUSSIVE HEADACHES ON HER ABILITY TO WORK ON A REGULAR AND CONTINUING BASIS.**

The ALJ found that Plaintiff had severe impairments, including degenerative disc disease, traumatic brain injury, post-concussive headaches, and cognitive disorder, depression and anxiety. (R. 13). He further found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could not balance, or climb ladders, ropes or scaffolds; she could have no exposure to unprotected heights, dangerous machinery, or other workplace hazards; she was limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks with no more than occasional and superficial interaction with coworkers or members of the general public; she should have no transactional interaction such as sales or negotiation; she was

4

limited to a low stress work environment, defined as not production rate pace work, but, rather, goal oriented work with only occasional and routine changes in the work setting.  Id.

Plaintiff argues that this RFC finding is deficient because the ALJ failed to evaluate the effects of her post-concussive headaches on her ability to work on a regular and continuing basis.  See Pl.'s Br. [ECF No. 9] at 5-8.  Specifically, Plaintiff contends that "despite finding post-concussive headaches to be a severe impairment and further finding that this condition 'could reasonably be expected to cause the alleged symptoms,' the ALJ did not evaluate the primary effects of [Plaintiff's] headaches on her ability to work – that she would be absent from work and/or 'off task' in excess of what the vocational expert (VE) stated would be tolerated in a competitive work setting."  Id. at 5.[2]  Plaintiff points to her testimony that she has post-concussive headaches of such severity that she could not perform any activities of daily living for most of the day approximately three days a week, and alleges that the ALJ erroneously failed to address these effects, or any other headache-related limitations, in his RFC finding.  Id.  After careful review of the record, including the documentary evidence, the ALJ's opinion, and the hearing testimony, I agree that remand is necessary on this issue.

An ALJ must base his RFC assessment on all of the relevant evidence of record.  20 C.F.R. § 404.1545(a).  In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  That is, the ALJ's decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008); see also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's decision should allow the

---

[2] In response to two initial hypothetical questions from the ALJ, the VE testified as to a number of jobs the hypothetical individual could perform in the national economy. (R. 50-54). The ALJ asked the VE if, under either of those hypotheticals, employment would be available if "the individual would be off task no less than 25 percent of each workday in addition to regularly scheduled breaks, or, . . . in the alternative would be absent at least one full day per work week."  Id. at 54.   The VE replied that there would not be employment available with those additional limitations.  Id.

reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

Here, the ALJ found Plaintiff's post-concussive headaches to be a severe impairment, and noted some of Plaintiff's headache-related complaints. (R. 13, 15-18). For example, the ALJ cited Plaintiff's testimony that she experiences daily headaches that are worse in the morning but that are somewhat ameliorated with pain medication throughout the course of the day. Id. at 16. He also acknowledged Plaintiff's testimony that as a result of her headaches, she has to lie down twice daily for 90 minutes at a time and that, when her headaches are really bad, she experiences "spots" and "blurry vision." Id. The ALJ also incorporated some limitations based on Plaintiff's headaches in his RFC finding. See id. at 17-18 (limiting Plaintiff's postural activities and exposure to hazards based on her complaints of dizziness and headaches).[3]

Despite acknowledging Plaintiff's alleged headache-related symptoms and limitations, the ALJ failed to discuss in any meaningful way the record evidence relating to Plaintiff's headache complaints. This evidence includes numerous medical records documenting Plaintiff's complaints of, and treatment for, headache pain, including records from Plaintiff's treating neurologist, Dr. Reddy, dating from shortly after her first brain injury in 2007 to July, 2011. See, e.g., R. 297-346 (Exhibit 3F), 636-44 (Exhibit 13F).[4] Dr. Reddy's records also reflect the

---

[3] Specifically, the ALJ found that Plaintiff was precluded from balancing or climbing ladders, ropes, or scaffolds; and should have no exposure to unprotected heights, dangerous moving machinery, or other workplace hazards. (R. 15).

[4] Dr. Reddy's treatment notes consistently chronicle Plaintiff's headache complaints. During her first visit on March 5, 2008, Plaintiff reported experiencing many symptoms, including headaches, since her injury and rated her headache symptoms a 5/6. (R. 342-43). On March 19, 2008, Plaintiff reported overall improvement in her symptoms but complained of "nearly constant pressure/throbbing type headaches" that continued to be a significant issue for her. (R. 339-40). On April 29, 2008, Plaintiff noted some improvement in that she was only having headaches about four times weekly, rated 7-8/10, and lasting about 3-4 hours. (R. 336-37). On May 28, 2008 and June 26, 2008, Plaintiff reported no significant improvement with her symptoms. (R. 331-34). On July 31, 2008, Plaintiff reported significant worsening of her headache symptoms with the discontinuation of Effexor. (R. 328-29). On September 8, 2008, Plaintiff reported a modest improvement in her overall symptoms but noted that her headaches were very bad at times and associated with nausea and vomiting. She stated they typically lasted 3-4 hours and she was taking Advil for relief. (R. 325-26). On April 22, 2009, after experiencing her second brain trauma,

6

prescription of a variety of different medications to combat Plaintiff's headache symptoms, with varying effects. See id. As Plaintiff correctly notes,

> a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7p. Although Plaintiff's complaints and Dr. Reddy's treatment notes certainly do not require a finding of disability, the ALJ's failure to meaningfully discuss those records prohibits me from determining whether the ALJ considered and discredited those records or simply ignored them.

In addition, the ALJ attempted to discredit Plaintiff's claim that she was unable to work by citing to her ability "to sustain a panoply of daily activities such as cleaning her apartment, laundering clothing, shopping for necessities, preparing daily meals, and driving an automobile." (R. 17). In discussing these activities of daily living, however, the ALJ "failed to mention the rigor or frequency of these activities as performed by Plaintiff." Tomassi v. Colvin, No. 2:12-cv-01354, 2013 WL 5308021, at *15 (W.D. Pa. Sept. 20, 2013). In particular, although the ALJ acknowledged Plaintiff's testimony that she must lie down twice daily for 90 minutes at a time due to her headaches (R. 16), he failed to discuss whether (and, if so, why) he chose to discredit that

---

Plaintiff reported a significant worsening of all of her post-traumatic symptoms. (R. 322-23). On May 13, 2009, Plaintiff reported only "modest" headaches. (R. 319-320). On July 6, 2009, however, Plaintiff reported more headaches and anxiety as her husband's criminal trial approached. (R. 316-17). On February 10, 2010, Plaintiff reported continued chronic headaches and a recent exacerbation of her symptoms. (R. 302-03). On May 12, 2010, Plaintiff experienced significant improvement in her headache symptoms with Wellbutrin. (R. 297-98). Notes from March 23, 2011, however, report constant headaches on the right side for a week and a half. (R. 639). On April 6, 2011, Plaintiff complained about ongoing, refractory headaches, with no benefit from Wellbutrin. (R. 638-39). On July 7, 2011, Plaintiff reported continued headaches and no significant change in her symptoms. (R. 638).

testimony in making his RFC finding. The ALJ also did not mention Plaintiff's testimony that, at least three days a week, she suffers headaches that are so debilitating she cannot engage in any of her daily activities. (R. 45). As set forth above, the VE testified that there would not be any jobs available for an individual who would be off task no less than 25 percent of each workday in addition to regularly scheduled breaks, or, in the alternative, would be absent at least one full day per work week. (R. 54). Moreover, it is well-established that "sporadic or transitory activity does not disprove disability." Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981); see also Kangas v. Bowen, 823 F.2d 775, 777-78 (3d Cir. 1987) (stressing that the regulations defining RFC require the Secretary to determine a claimant's capacity for work on a "regular and continuing" basis (citing 20 C.F.R. § 404.1545(b))).

The ALJ's failure to address Plaintiff's testimony regarding her headache-related limitations; her history of seeking medical treatment for her headaches; and her persistent attempts to obtain relief through various medications mandates a remand with instructions to the ALJ to consider this evidence in making his RFC determination. If the ALJ chooses to discredit any of this evidence and/or Plaintiff's testimony concerning the same, he must set forth the reasons for doing so in order to allow for meaningful judicial review.

### C.  WHETHER THE ALJ'S CREDIBILITY FINDING IS INSUFFICIENT AS A MATTER OF LAW

Plaintiff argues that the ALJ erred in determining that her allegations regarding her limitations due to her post-concussion headaches were not totally credible because he failed to consider the proper factors, including Plaintiff's persistent attempts to obtain treatment; the consistency of her complaints; and her "stellar" prior work record. Pl.'s Br. [ECF No. 9] at 9-11.

To be sure, the ALJ is charged with the responsibility of determining a claimant's credibility. See Smith, 637 F.2d at 972; Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). In determining the credibility of an individual's statements, the ALJ must consider "the entire case

record." SSR 96-7p. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." Id. Generally, the ALJ is given great discretion in making credibility determinations, and I must defer to such findings unless they are not supported by substantial evidence. Smith, 637 F.2d at 972; Baerga, 500 F.2d at 312.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with his RFC assessment. (R. 16). Although his opinion then expands on this general credibility finding with respect to Plaintiff's other impairments, the ALJ does not specifically address her credibility with respect to her headache-related complaints.

For the same reasons set forth in Section II.B. above, the ALJ's credibility determination regarding Plaintiff's alleged limitations due to her post-concussion headaches cannot stand without further elaboration. Thus, remand is warranted on this issue.

**D. WHETHER THE COURT SHOULD ISSUE AN IMMEDIATE AWARD OF BENEFITS BECAUSE THE ALJ ERRED IN FINDING THAT PLAINTIFF WAS ABLE TO PERFORM COMPETITIVE WORK**

Plaintiff argues that her testimony regarding the limitations allegedly caused by her post-concussive headaches coupled with the VE's testimony that a person who missed one day a week of work or who was off-task more than 25 percent of the time could not perform competitive employment, requires that I issue an immediate award of benefits in this case. Pl.'s Br. [ECF No. 9] at 12. This argument is without merit.

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the

decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). It is well-established that the decision to award benefits:

> should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits. When faced with such cases, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits.

Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986). "When an ALJ does not address all of the evidence of record, the appropriate action is to remand for further proceedings, as a District Court has no fact-finding role in reviewing social security disability cases." Zied v. Astrue, 347 F. App'x 862, 865 (3d Cir. 2009).

Contrary to Plaintiff's suggestion, this is not a situation in which substantial evidence of record establishes that Plaintiff is disabled and entitled to benefits. Rather, this case involves the ALJ's failure to meaningfully address an issue – *i.e.*, Plaintiff's testimony and other evidence concerning her headache-related complaints. Under these circumstances, remand for further consideration is the appropriate outcome. See Zied, 347 F. App'x at 865 & n.4.

**E. WHETHER THE ALJ FAILED TO ADDRESS THE LIMITATIONS SET FORTH IN THE MEDICAL OPINION OF THE STATE AGENCY PHYSICIAN WHO REVIEWED THE FILE**

In his opinion, the ALJ gave great weight to the opinion of state agency psychologist, Edward Jonas, Ph.D. (R. 18, 405-421). On September 10, 2009, Dr. Jonas opined, inter alia, that Plaintiff had moderate limitations in her ability to perform activities within a schedule; maintain regular attendance; complete a normal workday/workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and concentrate and persist at tasks. (R. 405-406). Although

Plaintiff does not challenge Dr. Jonas's characterization of her limitations, she argues that the ALJ erroneously failed to include those limitations in his RFC finding.   This argument is without merit.

State agency physicians and psychologists such as Dr. Jonas are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings as opinion evidence.   Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 n.2 (3d Cir. 2007).   As set forth above, however, the final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. § 404.1527(e)(2), (e)(3).

Nevertheless, contrary to Plaintiff's argument, the ALJ in this case incorporated all of the above moderate limitations into his RFC finding.  Specifically, the RFC finding incorporated numerous limitations related to Plaintiff's cognitive disorder, depression, and anxiety, including: a limitation to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks with no more than occasional and superficial interaction with coworkers or members of the general public; no transactional interaction such as sales or negotiation; and limitation to a low stress work environment defined as "not production rate pace work, but, rather, goal oriented work with only occasional and routine changes in the work setting."   (R. 15).

Plaintiff cites several cases for the proposition that a limitation to "simple, routine tasks that do not require constant interactions with coworkers or the general public" does not adequately account for a claimant's moderate deficiencies in concentration, persistence, or pace. Pl.'s Br. [ECF No. 9] at 14 & nn. 54-55 (citing cases).   Several courts within this Circuit, however, have held to the contrary.   See Padilla v. Astrue, Civ. A. No. 10-cv-4968, 2011 WL 6303248, at *10 (D.N.J. Dec. 15, 2011) (citing cases).   Furthermore, and in any event, the ALJ in this case did not merely limit Plaintiff to simple, routine tasks.   Rather, his RFC finding also required "no

11

transactional interaction such as sales or negotiation" and limitation to "a low stress work environment" defined as "not production rate *pace* work, but, rather, goal oriented work with only occasional and routine changes in the work setting." (R. 15) (emphasis added).[5] These additional limitations go beyond simple, routine tasks and more than adequately address Plaintiff's moderate limitations on concentration, persistence, and pace.[6]

Because the ALJ properly accounted for Plaintiff's moderate mental limitations in formulating her RFC, substantial evidence supports this portion of his RFC finding, and remand on this point is unwarranted.

### F. WHETHER THE ALJ ERRONEOUSLY FAILED TO INCLUDE PLAINTIFF'S USE OF A CANE IN HIS RFC DETERMINATION AND HYPOTHETICAL QUESTION TO THE VE

Plaintiff contends that she used a cane when walking and standing due to dizziness, imbalance, and weakness in her right leg, as prescribed by her treating physician, Dr. Reddy. Id. Pl.'s Br [ECF No. 9] at 15-18. Plaintiff alleges that the ALJ erred by ignoring this limitation and failing to include her use of a cane in his RFC determination and/or hypothetical question to the VE. Id. I disagree.

Contrary to Plaintiff's suggestion, the ALJ did not ignore her testimony regarding her cane use. Rather, the ALJ acknowledged in his opinion Plaintiff's testimony that she has experienced a right leg drag since her initial head injury; that she has standing and walking limitations due to her neck and back pain; and that she "uses a cane to aid in ambulation as prescribed by Dr. Red[dy]." (R. 16). The ALJ noted, however, that he failed to find any documentation in the

---

[5] The ALJ also included these limitations in his hypothetical question to the VE at the hearing. (R. 51).

[6] Although Dr. Jonas noted some moderate limitations, he did not conclude that those limitations precluded Plaintiff from working. Rather, he found that Plaintiff could understand, retain, and follow simple job instructions, and make simple decisions; and concluded that she was "able to meet the basic demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. 405-407). Although the ALJ is not bound by Dr. Jonas's ultimate opinion on disability, their findings are consistent on this point.

record "to support [Plaintiff's] testimony that Dr. Redd[y] prescribed her a cane to assist in ambulation." (R. 17). After careful review of the record, including voluminous treatment records from Dr. Reddy, I likewise find no evidence that Dr. Reddy, or any other medical provider, prescribed the use of a cane for Plaintiff or imposed any restrictions on her ability to stand or walk.

Unlike with Plaintiff's headaches, the ALJ supported with substantial evidence his finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her back and neck pain and alleged cane-use were not fully credible. (R. 16). In this regard, the ALJ explained in detail how the record evidence failed to fully support Plaintiff's testimony regarding her alleged back and neck pain. (R. 17) (citing Exhibits 2F; 11F pp. 19, 31-32; 3F pp. 6, 11, 13, 16, 21, 32, 38, 41, and 47; 1F; 7F; 10F). For example, the ALJ cited numerous treatment notes stating that Plaintiff's neurologic and musculoskeletal examinations were normal. He also cited records indicating that Plaintiff's treatment for back pain was relatively conservative and routine and noted that Plaintiff was not prescribed a TENS unit for pain control. See id. The ALJ specifically stated that he reviewed the record and could find no evidence supporting Plaintiff's statement that Dr. Reddy prescribed a cane. Id.

For these reasons, substantial evidence supports the ALJ's exclusion of a limitation related to Plaintiff's alleged cane use, and the ALJ did not err in this regard.

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because, in discussing his RFC and credibility findings, the ALJ failed to address

13

Plaintiff's testimony regarding her headache-related limitations; her history of seeking medical treatment for her headaches; and her persistent attempts to obtain relief through various medications. The case therefore is remanded for further consideration in light of this Opinion. For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TINA M. TRAUTERMAN,  )
)
    Plaintiff, )
)
  vs. ) Civil Action No. 1:12-268
)
CAROLYN COLVIN, Acting Commissioner )
of Social Security,[1] )
)
    Defendant. )
)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 19th day of February, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED to the extent that Plaintiff seeks remand for further consideration, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment (Docket No. 12) is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013 and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).